AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

**CRIMINAL COMPLAINT**

vs.

CASE NUMBER: 6:10-mj- *1264*

RAFAELA DUTRA TORO

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about June 15, 2009, and August 3, 2009, in Orange County, Florida, in the Middle District of Florida, defendant did, commit fraud and misuse of visas, permits, and other documents in violation of Title 18, United States Code, Sections 1546 and 2. I further state that I am a Special Agent with U.S. Department of Labor, Office of Labor Racketeering and Fraud Investigations, and that this Complaint is based on the following facts:

### SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

Signature of Complainant
SA Roger J. Passero
U.S. Department of Labor

Sworn to before me and subscribed in my presence,

August 18, 2010                          at          Orlando, Florida

GREGORY J. KELLY
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

State of Florida
County of Orange

Case No. 6:10-mj-

## AFFIDAVIT

I Roger J. Passero, being duly sworn state the following:

### INTRODUCTION

1.    I have been employed by the U.S. Department of Labor, Office of Labor Racketeering and Fraud Investigations ("DOL") for approximately five years.    My responsibilities include the investigations of violations of federal laws within the DOL's jurisdiction and I have conducted numerous criminal investigations involving visa fraud, false statements, mail fraud, wire fraud and conspiracy.

2.    This affidavit is made in support of a complaint charging **RAFAELA DUTRA TORO (TORO)** with violations of Title 18, United States Code, Sections 1546 (fraud and misuse of visas, permits and other documents) and 2.  **TORO** is a citizen and national of Brazil born on \*\*/\*\*/81.  She received Lawful Permanent Resident status in the United States under alien file A\*\*\* \*\*\* 299.

3.    I have personally assisted in the development of this investigation, which is the subject of this affidavit; therefore, I am familiar with the facts and circumstances outlined below.  The facts and information contained in this affidavit are based upon my personal knowledge derived from my overall participation in this investigation, details that have been relayed by various agencies, reviews of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein (including participants),

and information gained through my training and experience and the training and experience of others.

4.      In addition, I make this affidavit based upon information from visa petitions received by your affiant from U.S. Citizenship and Immigration Services (CIS), information and labor certification applications received from Department of Labor (DOL), visa information and petitions received from Department of State, Diplomatic Security Service (DOS/DSS), information obtained through confidential informants, information received through other various databases, information found on the World Wide Web and information and documentation received as a result of a federal search and seizure warrant executed at the business office of VR SERVICES,[1] a conglomerate that is comprised of eleven smaller "shell" subsidiary companies, which exist in support and furtherance of the overall conglomerate.    VR SERVICES is located at 7536 Universal Boulevard, Orlando, Florida 32819.  In this affidavit, I have set forth only the facts I believe necessary to establish probable cause to show violations of Title 18, United States Code, Section 1546 (fraud and misuse of visas, permits and other documents).

5.      Upon belief of your affiant, defendant **TORO** did knowingly and willfully make a false statement on an application, petition, affidavit, or other documents required by CIS, with respect to a material fact on CIS Form I-129, Petition for Nonimmigrant Worker, in violation of Title 18, United States Code, Section 1546(a).

---

1 "VR SERVICES" includes the following subsidiary companies: 1) VR High Quality Corporation; 2) EPCO People Employment Corporation; 3) Travel Work Study Overseas, Inc.; 4) Fourth Millennium Corporation; 5) CD Quality Service Corporation; 6) RV Quality Services, Inc.; 7) WB Improvements, Inc.; 8) Crystal Diamond, Inc.; 9) Very Reliable Services, Inc.; 10) MLE Management Services, Inc.; and 11) Ocean Star Services Corporation.

## OVERVIEW

6.      Under the laws and regulations of the United States, foreign nationals are not permitted to lawfully work in the United States unless they obtain prior employment authorization from the United States Government. One lawful means by which foreign nationals can obtain employment authorization is through a nonimmigrant employment visa known as an H-2B visa.

7.      An H-2B visa is a nonimmigrant visa granted to foreign nationals who seek to work in the United States on a temporary basis. The H-2B nonimmigrant visa program permits employers to hire foreign workers to work in the United States to perform temporary nonagricultural services or labor on a one-time, seasonal, peak-load, or intermittent basis. The job must be temporary in nature (for one year or less). The employer's need cannot be ongoing or continuous. Before filling the position with temporary foreign labor, the employer must first seek to hire qualified United States citizens.

8.      An employer seeking to obtain H-2B visas for foreign nationals that they will employ is required to file a CIS form I-129, Petition for Non-Immigrant Worker. In the I-129 petition, the prospective employer represents that there is a specific job ready to be filled by the foreign labor, it specifies the exact location where the prospective H-2B visa holders will work, and describes the nature, terms, and requirements of the job. The prospective employer must complete the I-129 petition and sign under penalty of perjury, stating that the petition and the evidence submitted with it is all true and correct.

9.      An employer may seek to obtain H-2B renewal visas for prospective employees who are already in the United States as H-2B visa holders but who work for

a different company. In this case, the employer must show that they are a different company than the original petitioning company as continuous employment is a disqualifying factor unless there is a change of location. A company filing more than one I-129 petition with CIS that would overlap an existing petition would generally not be approved for the same geographical location.

10.     An H-2B, nonimmigrant alien, is an alien that can enter and /or remain in the United States for a temporary period of time and is restricted to the activities consistent with the conditions of their visa or petition.

11.     Additionally, there are also eligibility requirements for employers to certify. Employers cannot seek or receive payments of any kind from the employee for any activity related to obtaining labor certification, including payment of the employer's attorney fees, application fees, or recruitment costs. Employers cannot place any H-2B workers outside the area of intended employment specified unless the employer has obtained a new temporary labor certification from DOL. If the application is being filed as a job contractor, the employer will not place any H-2B workers with any other employer or at any other employer's work site unless: 1) the employer applicant makes a bona fide inquiry as to whether the other employer has or intends to displace United States workers within the area of intended employment; and 2) all work sites are listed.

## FACTS SUPPORTING PROBABLE CAUSE

12.     Travel Work Study Overseas, Inc. (TWSO) was one of the companies that comprised the VR SERVICES conglomerate. **TORO** was the Assistant Director of TWSO in the United States.    TWSO functions as an H-2B recruiting agency for VR SERVICES with offices in Sao Paolo, Brazil, and Orlando, Florida. Additionally, TWSO

4

was utilized by VR SERVICES to prepare and file labor certification applications and H-2B visa petitions with DOL and CIS, respectively.

13.     CD Quality Service Corporation is one of the "shell" companies that comprised the VR SERVICES conglomerate.  CD Quality Service Corporation was a labor staffing company that supplied contract labor to hotels and various other service industry businesses.  **TORO** is also effectively the Assistant Director VR SERVICES and each of the eleven subsidiary "shell" companies, including CD Quality Service Corporation.

14.     On or about June 15, 2009, an ETA-9142 application, case number C-0916845250, was submitted by CD Quality Service Corporation to DOL requesting certification for 80 room attendant positions.  Appendix B.1 of that application contained the signature of **TORO**, who signed as the "preparing agent" of the ETA Application.  As the "preparing agent," **TORO** certified that she was designated by CD Quality Service Corporation to act on its behalf in connection with the ETA Application.   **TORO** further certified she understood that knowingly furnishing false information in the preparation of the form and any supplement therein, or to aid, abet, or counsel another to do so is a felony in accordance with Title 18, United States Code, Section 1001.  **TORO** also certified that the information contained within the ETA Application was true and correct.

15.     On June 23, 2009, DOL sent a letter to CD Quality Service Corporation, c/o **TORO**/ TWSO, requesting additional information from the company because CD Quality Service Corporation failed to comply with all the requirements of the H-2B program.  The deficiencies cited by DOL were for the following: CD Quality Service Corporation failed to submit supporting evidence and documentation that justified a

5

temporary need. CD Quality Service Corporation was advised that its response had to include, but not be limited to, the following:

    i. Signed work contracts, letters of intent from its clients and summarized monthly payroll reports for a minimum of one previous calendar year. Such documentation to be signed by the employer attesting that the information being presented was compiled from the employer's actual accounting records.

    ii. If the employer was a job contractor, it will not place any H-2B workers with any other employers or at other employer's worksite. The employer must submit evidence that the worksite is located at the address indicated on the ETA Application.

16.    In response to DOL's request for additional information, CD Quality Service Corporation submitted the requested information, which included service agreement contracts from the Seralago Hotel and Suites located in Kissimmee, Florida, and the Sheraton Safari Hotel and Suites located in Orlando, Florida. These service agreement contracts indicated that the respective hotels had a specific need for the temporary employees listed in the contracts and that the hotels would use employees provided by CD Quality Service Corporation to fill the positions. This document was signed by Valeria Barbugli, Vice President of CD Quality Service Corporation.

17.    On July 1, 2009, based on the ETA Application and supporting documentation provided by CD Quality Service Corporation, DOL partially certified CD Quality Service Corporation for 77 room attendants for the temporary period of July 15, 2009, through April 30, 2010. The reduced number of positions certified was due to CD Quality Service Corporation's recruitment report, which had indicated its successful recruitment of three United States workers. This partial certification was sent to Rafaela **TORO**, Travel Work Study Overseas.

18.    Your affiant and ICE Special Agent Brian Devine (SA Devine) conducted an interview of a cooperating source (CS-3). CS-3 responded to a job recruitment advertisement placed by CD Quality Service Corporation for room attendant positions. As stated above, the recruitment of United States workers is a requirement in the ETA Application process. CS-3 explained that s/he is a United States Citizen who was unemployed at the time s/he contacted CD Quality Service Corporation for employment. CS-3 stated that s/he faxed his/her resume and was given an interview in June 2009 prior to the July 1, 2009, approval. CS-3 informed your affiant that s/he was not offered a job with CD Quality Service Corporation until two to three weeks after his/her interview. CS-3 explained that CD Quality Service Corporation informed him/her that the position would be for a combination of full-time and part-time work, and that s/he would be employed as an "independent contractor". CS-3 was also told that s/he would not receive an initial paycheck until after s/he worked for an entire month. CS-3 stated that s/he ultimately turned down the position because s/he had already found employment elsewhere. Accordingly, CS-3 was not hired by CD Quality Service Corporation.

19.    After further review of the ETA-9142 submitted to DOL by **TORO**, it was verified that **TORO** submitted a recruitment report to DOL dated June 15, 2009, in support of the ETA-9142 application, case number C-0916845250. In this recruitment report, it was falsely represented that CD Quality Service Corporation had both interviewed and hired CS-3 to fill one of its available positions to show that CD Quality Service Corporation was hiring United States citizen workers.

7

20.    On August 3, 2009, CIS received an I-129 petition from CD Quality Service Corporation, c/o **TORO** / TWSO, requesting the approval of 58 H-2B workers utilizing the above-referenced certified ETA Application.

21.    Contained within this I-129, Petition for Non-Immigrant Worker, identified as case number EAC0921550696 was: 1) a Form G-28, Notice of Entry as Attorney or Representative signed by **TORO**; 2) and a Form I-907, Request for Premium Process Service also signed by **TORO**, in which she declared that she prepared the petition. Also contained within EAC0921550696 was a Form I-129, that was signed by **TORO** declaring that she prepared the form and her preparation was based on all information of which she has knowledge.  On the I-129, **TORO** indicated that this was for a "Change of Employer" petition stating that the prospective H-2B workers would be working at 7468 Universal Boulevard, Orlando, Florida (the office location of CD Quality Service Corporation).

22.    The I-129 petition was approved by CIS on August 6, 2009, for 58 H-2B workers and was valid through April 30, 2010.

23.    In August 2009, your affiant and SA Devine met with a cooperating source of information (CS-2), who wanted to provide the government information regarding VR SERVICES and subsequently CD Quality Service Corporation.  CS-2 is a citizen and national of the Philippines who entered the United States in 2007 as an H-2B visa holder based on a petition filed by a company other than VR SERVICES. After CS-2's initial entry, s/he was employed by VR SERVICES and s/he utilized the conglomerate to renew his/her H-2B visa(s).  VR SERVICES subsequently petitioned for CS-2 on four separate H-2B "Change of Employer" petitions utilizing the following "shell" companies

8

under its control and management: WB Improvements, Fourth Millennium Corporation, MLE Management, and most recently by CD Quality Service Corporation under the aforementioned petition.

24.    On July 28, 2009, CS-2 went to VR SERVICES to be placed on a new H-2B visa petition. Through checks of ICE indices, your affiant verified that the approved I-129 petition containing CS-2 as an H-2B beneficiary was EAC0921550696.  After a review of documents, it was also learned that this petition was based on the afore-mentioned certified ETA Application, case number C-0916845250, for 77 room attendants to be employed by CD Quality Service Corporation for individuals to work at either the Seralago or the Sheraton Safari hotels.

25.    CS-2 informed SA Devine that when s/he went to VR SERVICES' office to renew the H-2B visa, s/he specifically met with **TORO** and her assistant. CS-2 explained that **TORO** was responsible for filing all of VR SERVICES' H-2B visa renewals.  CS-2 also explained that s/he personally paid **TORO** and her assistant approximately $550 in order to be placed on the visa renewal.   CS-2 provided SA Devine with a VR SERVICES' receipt identifying this payment.

26.    With regard to the petition, CS-2 confirmed that CD Quality Service Corporation is the same company as WB Improvements, Fourth Millennium and MLE Management (his/her previous H-2B employers).  CS-2 further explained that his/her employment did not change since s/he received a renewed H-2B visa under the new employer name CD Quality Service Corporation, and that s/he did not work (nor did s/he ever work) at the Seralago or the Sheraton Safari hotels, which are the worksites that are certified by DOL on the ETA application.

9

27.    On January 21, 2010, your affiant and SA Doug Baldwin conducted an interview of the Human Resource Director for the Seralago Hotel and Suites in Kissimmee, Florida regarding a contract agreement between the hotel and CD Quality Service Corporation. The Human Resource Director explained that VR SERVICES also goes by the name CD Quality Service Corporation.

28.    Your affiant provided the Human Resource Director with a staffing service contract dated May 15, 2009, which was purportedly between CD Quality Services Corporation, d/b/a VR High Quality Services and the Seralago Hotel and Suites. This is the service contract that was submitted by **TORO** in support of the aforementioned ETA-9142 and the CIS petition EAC0921550696. This agreement showed that CD Quality Service Corporation would contract out 35 housekeeper employees to the Seralago Hotel and Suites for the period of July 13, 2009 through April 30, 2010. The contract contained the signature of a manager from the Seralago Hotel and Suites.

29.    The Human Resource Director reviewed the contract and stated that the contract was not legitimate. She explained that the manager who signed the contract had left the Seralago Hotel and Suites on February 25, 2009 (before the date of this contract). The Human Resource Director added that the need for 35 housekeepers and the contract period dates were fraudulent statements. She explained that during the peak season, the Seralago Hotel and Suites would only need twenty housekeepers and during the off season, they would need only five.

30.    Your affiant informed the Human Resource Director that this contract was used to support 35 H-2B work visas. She responded that neither VR SERVICES nor

CD Quality Service Corporation has the authority to file for H-2B workers on the Seralago Hotel and Suites' behalf.

31.    On January 21, 2010, your affiant and SA Baldwin conducted an interview of the General Manager of the Sheraton Safari Hotel in Orlando, Florida regarding a purported contract agreement between the hotel and CD Quality Service Corporation. The General Manager stated that he hired VR SERVICES as one of their contract cleaning companies. He further explained that he had a regular group of approximately 10 VR SERVICES' workers year round and would contact them when he needed additional workers.

32.    Your affiant provided the General Manager with a staffing service contract dated May 22, 2009, purportedly between CD Quality Service Corporation and the Sheraton Safari to provide 45 employees to perform housekeeping services during the period of July 15, 2009, through April 30, 2010. The General Manager reviewed the contract and stated that this was a fraudulent contract, adding that he did not sign a contract with the individual listed for 45 housekeepers on May 22, 2009. He further stated that his signature was contained on the last page, but added that it must have been from another contract he previously signed. The General Manager explained that the dates on the contract are fraudulent and that the hotel would never need 45 workers full time for the busy season and off season months.

33.    The General Manager explained that he was unaware that his hotel would be used to support 45 H-2B work visas and gave no authorization to CD Quality Service Corporation to file an application with Homeland Security on the Sheraton Safari's behalf.

11

34.     On December 7, 2009, your affiant and DOL Special Agent Robert Torelli conducted an interview of **TORO** at the VR SERVICES/TWSO office located at 7536 Universal Boulevard, Orlando, FL.     Prior to questioning, **TORO** informed the interviewing agents that she was fluent in English and did not require a Portuguese interpreter.   **TORO** was read her Constitutional rights in English and waived her rights both verbally and in writing.   Out of an abundance of caution, however, agents then contacted Elizabeth Shaler, a contract Portuguese interpreter for ICE at (212) 264-6831, who telephonically translated **TORO's** Constitutional rights to her in Portuguese, **TORO's** native language.  Subsequent to the interview, **TORO** again waived her rights and agreed to speak with agents.

35.     As a result of the interview (post-Miranda warnings), **TORO** stated that she was the Assistant Director of TWSO.  **TORO** explained that TWSO was an agency that handled the recruitment of foreign workers and the filing of H-2B visas for VR SERVICES.  **TORO** explained that her main duties (as the Assistant Director of TWSO) were to prepare and file labor certification applications and I-129 visa petitions for: 1) VR SERVICES' current H-2B workers;  2) for H-2B workers for other companies wishing to renew their visas through VR SERVICES; or 3)  for new H-2B workers from overseas.

36.     While working in the capacity as Assistant Director of TWSO, **TORO** admitted to your affiant that she prepared and filed ETA labor certification applications with DOL as well as H-2B visa petitions with CIS for VR SERVICES and their various "shell" companies, which contained fraudulent statements and false information.  **TORO** explained that the ETA Applications that she filed with DOL falsely claimed that the requested workers would solely perform work at one or two specified client hotels.

TORO further explained that she was aware that it was never the intention for those specified workers to perform labor at the client hotel locations indicated; rather, it was a fraud to justify the labor certifications and H-2B visas. TORO explained that the numbers of housekeeping workers requested on the ETA Applications that she prepared and filed were excessive. TORO further stated that she knew there was never a need for that many workers at the specific hotels, which were used to support the applications.

37.    TORO admitted that she prepared the monthly payroll charts for VR SERVICES' various companies that were submitted to DOL. TORO also stated that she prepared "support-letters" for VR SERVICES, which were incorporated into the visa petitions that were submitted to CIS. TORO explained that the support letters used for all of the filings were basically the same letters. TORO stated that all she would do is "change" the company name on the top of the letters as well as the purported dates of temporary need for alien workers.

38.    TORO also admitted that she was aware that the new ETA applications have a declaration which specifies that collecting payments of any kind from employees for any activity related to obtaining labor certification was prohibited. TORO admitted that she collected payments from aliens even after the Federal laws prohibiting this practice were enacted. TORO further admitted that she charged aliens H-2B visa renewal fees of approximately $550 each.

39.    Additionally, TORO admitted that when she filed an H-2B visa petition for VR SERVICES' workers who were already in the United States, she knew that those workers would continue to work at their current work site locations and those workers

13

were never going to work at the location sites that she indicated on the ETA Application and the I-129 petition.

40. **TORO** admitted that she knowingly filed consecutive H-2B visa petitions for VR SERVICES' employees by falsely claiming that these individuals were going to work for a new company. Finally, **TORO** further admitted she was aware that DOL and CIS relied on the number of workers requested and expected that the worksites specified on these H-2B applications would be stated truthfully.

41. Based upon the above-stated facts, your affiant believes that there is probable cause to believe that **TORO** has committed violations of Title 18, United States Code, Sections 1546 (Fraud and Misuse of Visas, Permits and Other Documents) and 2.

Further, your affiant sayeth naught.

Special Agent Roger J. Passero
U.S. Department of Labor

Subscribed and sworn to before me
this ___ day of August, 2010.

Hon. Gregory J. Kelly
United States Magistrate Judge

14